225 So.2d 480 (1969)
Succession of Edward Harrison MICHEL.
No. 3584.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1969.
*481 Leon Sarpy, New Orleans, for appellants. Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, of counsel.
Ed. J. deVerges, Sr., New Orleans, for defendants in rule and appellees.
Before CHASEZ, HALL and GARDINER, JJ.
GARDINER, Judge.
This is an appeal from a judgment of the district court dismissing an opposition to portions of a tableau of distribution filed by the co-executors in the Succession of Edward Harrison Michel.
The decedent died testate on December 4, 1966, leaving a will in statutory form together with two codicils thereto, neither of which figure in the matter presently before us. The testator made bequest to fourteen particular legatees and bequeathed the residue of his estate in equal portions to the same fourteen particular legatees. The testament was duly probated and the co-executors named therein, Ewell A. Smith and Edward J. deVerges, Jr., were duly qualified and appointed as such. Thereafter, public inventories of the testator's property in Orleans, Jefferson, and St. Tammany Parishes were ordered by the court and taken in conformity therewith.
On November 3, 1967, the co-executors filed a provisional account and tableau of distribution in accordance with law. Thereafter, several residuary legatees[1] filed an opposition to the tableau attacking notarial fees in the amount of $5,358.93, attorney's fees for Edward J. deVerges, Jr., in the amount of $5,000.00, and two appraisers' fees in the amount of $1,339.74 each. On December 4, 1967, the tableau was homologated insofar as it was not opposed, and on November 8, 1968, the opposition to the contested items was heard by the lower court and dismissed. This appeal followed.
Those portions of the testator's will which have provoked the controversy before us read:
"I give and bequeath to Edward J. deVerges, Jr., the sum $1,000.00; It is my intention that Edward J. deVerges, Jr. is to receive this amount in addition to any fees he will receive as Co-Executor or as Co-Attorney of my estate.
* * * * * *
"I hereby name and appoint Ewell Smith and Edward J. deVerges, Jr. Co-Executors of this my last will and testament, and I given them seizin of my estate from the moment of my death and dispense them from giving bond, and fees for such services are to be as prescribed by law.
* * * * * *
"In the event of my death I name and appoint Edward J. deVerges, Sr., Lewis G. Lemle, and Edward J. deVerges, Jr. Attorneys to open and conduct my succession proceedings, and fees for such services are to be charged against my estate."
The basis for the opposition to the tableau of distribution and the issues presented to us on appeal stem primarily from the fact (1) that Edward J. deVerges, Jr., occupies the dual status of co-executor and co-attorney for the testator's succession and (2) that Edward J. deVerges, Sr., appointed as co-attorney for the succession, claims a fee for notarial services rendered in the taking of the public inventory of the testator's property located in Orleans Parish. The issues posed for our consideration are as follows:
1. May an attorney at law who was named in a testament as executor and attorney for the succession collect both *482 executor's fees and attorney's fees from the succession?
2. May an attorney at law named in a testament as attorney for the executor, collect an additional fee for notarial services rendered in taking a public inventory?
3. Are appraisers appointed by the court to assist a notary public in taking a public inventory limited by statute to recover a $4.00 fee for each attendance at the taking of the inventory?
First, in support of their contention that Edward J. deVerges, Jr., cannot collect a fee as co-executor and as co-attorney for the succession, appellants cite numerous cases in support of the proposition that an executor may not make any charges against a succession under his trust for services rendered other than the commission allowed him by law. The cases cited by appellants, however, do not factually resemble the case before us. In the Succession of Sprowl[2] the court refused to allow the executor to recover an additional fee for supervising a plantation which formed part of the succession property since such supervision was encompassed in his duties as executor. In Succession of Calloway[3] the executor was again refused to recover an additional charge over and above his commission on the theory that he was entitled to 10% of the revenues of the succession which passed through his hands. The court stated that even though the executor's administration was advantageous to the estate, the advantages acclaimed thereto were included in and limited by the legal fee. In Succession of Rabasse,[4] the court refused to allow the executor to recover, in addition to his commission, a charge which he made for procuring a bond and charges for collecting rents. These charges were again considered part of the duties of the executor, and he was limited to his executor's fee. Finally, appellants cite Succession of Pizzati[5] in which one brother was appointed as executor and the other brother served as his attorney. The court rejected the contention that because the executor was himself an attorney, he had no need or authority to employ another attorney, his brother, for assistance. The court concluded that the executor was not bound to act as his own attorney and could employ other counsel. The opponents to the fees charged by the executor's brother contended that they were excessive. In discussing this point the court made the following statement:
"The evidence shows that no part of this fee is to inure to the executor."
Our reading of the Pizzati case discloses that the primary concern of the court was to be sure that the executor, who was not appointed an attorney, did not employ an attorney merely to share his fee and thereby benefit therefrom. Our reading of the case does not support the appellants' contention that the court concluded by this statement that the executor could not collect his fee as such and as attorney when clearly named in both capacities in a testament.
A thorough analysis of the cases cited by the appellants reveals that they are inapposite to the case at bar, and hence have no significant applications. The controlling case in the matter is Rivet v. Battistella,[6] where the Supreme Court held that the interest acquired by an attorney designated in a testament to act as attorney for the testator's succession is analogous to a donation mortis causa, and that parties taking under a will are bound by such a provision naming a particular attorney. The court stated "the donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals."
*483 Appellants contend, however, that the provisions of the testament now before us did not actually provide that the executor should be paid both fees. They refer to that portion of the will which states that Mr. deVerges was to take his special legacy in addition to "any fees he will receive as Co-Executor or as Co-Attorney of my estate." (Emphasis supplied.) Appellants argue that if the testator had desired Mr. deVerges to receive both the fees of executor and attorney for the succession he would have used the word "and" instead of the word "or". This interpretation, in our opinion, is somewhat strained, and a fair reading of the entire provision discloses that it was the intent of the testator to grant to Mr. deVerges the special legacy, the fee for his services as co-executor and the fee for his services as co-attorney for the succession. It has been recognized by the courts of this state that while the words "and" and "or" are not interchangeable, their strict meaning is more readily departed from than that of other words, and one is more readily read in the place of the other in deference to the meaning of the context of the matter being interpreted.[7] Moreover, if the testator had intended that Mr. deVerges receive only one of said fees, it is doubtful that he would have used the word "fees" in the plural when referring to the fact that the particular legacy was to be in addition to any fees he would receive as co-executor or co-attorney. The use of the plural in this case clearly establishes the testator's intent that Mr. deVerges should benefit from both fees.
Finally, if any further reason is needed for our conclusion that Mr. deVerges is entitled to receive both fees, reference to Article 1723 of the Louisiana Civil Code provides that when a person has ordered two things which are contradictory, that which is last written is presumed to be the testator's intention. In the present case, the or clause is transcribed in the will prior to those dispositions by which deVerges is appointed both co-executor and co-attorney for the testator's succession. Under these circumstances, it is quite clear that irrespective of the possible loose usage of the word "or", it is clear and patent from the will and from the statutory rules of interpretation applicable thereto, that the testator intended to and did in fact bequeath to E. J. deVerges, Jr., the special legacy, the fee for being co-executor, and the fee for being co-attorney.
One further point on this issue deserves mention. Throughout their brief, appellants refer to deVerges' "election" to receive his fee as executor over his fee as attorney. However, a study of the record reveals that no such "election" was made. The tableau of distribution was filed listing under the heading of "administrative expenses" deVerges' fee for services rendered as co-attorney and his fee for acting as co-executor. Since the executor's fee was not opposed, it was homologated forthwith.[8] Hence, the only reason for deVerges' acceptance of the executor's fee is the fact that it was payable and the attorney's fee was not so payable because of the opposition and this pending suspensive appeal.
In conclusion, a review of the record, of the jurisprudence, and of the statutory provisions applicable to the argument made by the appellant clearly reveals that there is no prohibition, either legal or testamentary, to the collection by E. J. deVerges, Jr., of his fees for services rendered as executor and as attorney for the succession. It is our conclusion that the lower court was correct in homologating this portion of the tableau.
*484 The argument of the appellants in support of their second contention, that an attorney appointed in a will cannot recover a fee for conducting a public inventory in the capacity of notary public, is at best weak. It is clear that a notary public is a public official separate and distinct from an attorney, and that he holds his appointment from the governor by and with the consent of the Senate.[9] Article 3131 of the Louisiana Code of Civil Procedure provides that when the court orders the taking of an inventory of the property of a succession it shall appoint a notary of each parish in which the deceased left property to take the inventory of such property in that parish. The status of attorney and that of notary are completely separate and distinct, and services rendered in each capacity are entitled to remuneration.
In support of their argument, appellants cite the case of Succession of Weil[10] in which an attorney claimed a fee for legal services in an extra amount for the reason that he had performed certain administrative tasks normally handled by the executor, who was absent in military service. The court allowed the normal attorney's fees and referred the attorney to the executor to recover from him for any additional work which should have been performed by him. A simple reading of the opinion establishes that the court was concerned only to prevent the succession from paying twice for the same services. There was nothing mentioned about one person recovering fees for services charged in different capacities.
After studying this case in detail, and after studying the argument made by the appellants predicated upon this case, we see no application thereof to the facts. On the contrary, our analysis of the legal proposition posed by the appellants convinces us that the attorney appointed in the will may also recover his fee for making a public inventory in accordance with the orders of the court.
The third point urged by appellants is that under R.S. 9:1423 the fees for appraisers are limited by statute to $4.00 for each "vacation" necessary in order to complete the succession inventory. The statute in question reads:
"§ 1423: Fees of experts and appraisers
"The fees allowed to experts and appraisers appointed to assist in taking inventories of successions shall not exceed the sum of four dollars for each expert or appraiser for each vacation held in taking the inventory."
The lower court held that pursuant to Act 22 of the Fourth Extra Session of 1935, it has authority to allow the appraisers the sum of one-half of one per cent of the inventory. A reference to the 1935 act reveals that it amends and reenacts Section 10 of Act 101 of 1870. However, by Act 2 of the Second Extra Session of 1950, Act 101 of 1870 and all acts amending and reenacting said act were repealed. Therefore, a literal interpretation of the law, as unfortunate as it may be, demonstrates that the appraisers are entitled to $4.00 each for each "vacation" necessary in effecting the inventory. Consequently, the opposition filed to the payment of $1,339.74 to each of the two appraisers must be upheld upon the authority of R.S. 9:1423.
Since the record does not disclose how many "vacations" were involved in this succession, the matter must be remanded to the lower court to determine the amounts due the appraisers.
For the foregoing reasons, the judgment of the lower court is affirmed except insofar as it approved the appraisers' fees listed in the executors' tableau, and this *485 matter is hereby remanded to the lower court for a determination of the fees due the appraisers, all in accordance with the rationale expressed herein.
Affirmed in part, reversed in part, remanded.
NOTES
[1] The opponents are Mrs. Isienell F. DeForest, Mrs. Mabel Smith Johnson, Miss Anne Franklin Garner, J. Franklin Garner, and Mrs. Charles T. Stewart. Mrs. Stewart died in the interim, and Mrs. Anne Franklin Garner is her only heir and legatee.
[2] 21 La.Ann. 544 (1869).
[3] 49 La.Ann. 968, 22 So. 225 (1897).
[4] 51 La.Ann. 590, 25 So. 326 (1899).
[5] 141 La. 645, 75 So. 498 (1917).
[6] 167 La. 766, 120 So. 289 (1929).
[7] See State ex rel. Board of Com'rs of Lake Borgne, etc. v. Bergeron, 235 La. 879, 106 So.2d 295 (1958).
[8] See C.C.P. art. 3308, which provides for the payment of uncontested claims when there is an appeal from a judgment homologating a tableau of distribution.
[9] See City of New Orleans v. Bienvenu, 23 La.Ann. 710 (1871).
[10] 205 La. 214, 17 So.2d 255 (1944).